UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DOUGLAS BRIAN ROMEO,

    Plaintiff,

v.                                    CASE No. 8:09-CV-502-T-TGW

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

_____

## ORDER

The plaintiff in this case seeks judicial review of the denial of his claims for Social Security disability benefits and supplemental security income payments.[1] Because the decision of the Commissioner of Social Security is supported by substantial evidence and contains no reversible error, the decision will be affirmed.

I.

The plaintiff, who was twenty-six years old at the time of the administrative hearing and who has a tenth grade education, was found to

---

[1] The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 15).

have no past relevant work, but has worked sporadically as a fiberglass welder, flood and mold technician, ceramic tile installer, and fence installer (Tr. 515, 516, 517, 521-24). He filed claims for Social Security disability benefits and supplemental security income payments, alleging that he became disabled due to bipolar disorder, seizures, back injury, depression, attention deficit disorder, and a digestive disorder (Tr. 80). The claims were denied initially and upon reconsideration.

The plaintiff, at his request, then received a de novo hearing before an administrative law judge. The law judge found that the plaintiff had severe impairments of "epilepsy, major depression, borderline cognitive functioning and substance abuse" (Tr. 13). He concluded that these impairments restricted the plaintiff to light work as follows (Tr. 14):

> He can stand, walk or sit for up to six hours in a typical eight-hour workday but requires a sit-stand option. The claimant also requires a clean temperature-controlled environment; no exposure to industrial hazards, climbing, heights or driving; and simple, routine, repetitive job [t]asks in the lowest semiskilled and unskilled job base. The claimant is further restricted to infrequent contact with co-workers and supervisors and no public contact. He is precluded from work requiring stringent time targets or production goals.

Based upon the testimony of a vocational expert, the law judge ruled that there are jobs that exist in significant numbers in the national economy that the plaintiff can perform, such as small products assembler and hotel housekeeper (Tr. 17). Accordingly, the law judge decided that the plaintiff was not disabled (Tr. 18). The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner.

II.

In order to be entitled to Social Security disability benefits and supplemental security income, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment," under the terms of the Social Security Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3), 1382c(a)(3)(D). In this case, the plaintiff must show that he became disabled before his insured status expired on March 31, 2007, in order to receive disability benefits. 42 U.S.C. 423(c)(1); Demandre v. Califano, 591 F.2d

1088, 1090 (5th Cir. 1979), cert. denied, 444 U.S. 952. There is not a similar requirement with respect to the plaintiff's claim for supplemental security income payments.

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004)(en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by

substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

### III.

The plaintiff challenges the law judge's decision on four grounds. None warrants reversal.

The plaintiff contends first that the law judge's finding that the vocational expert's testimony was consistent with the Dictionary of Occupational Titles ("DOT") is not supported by substantial evidence (Doc. 16, p. 10). In a related contention, the plaintiff asserts that the law judge did not resolve the conflict between the vocational expert's testimony and the DOT (id., p. 12).

Plaintiff's counsel has raised these same arguments before me in the past, I have rejected them, and the rulings have been affirmed on appeal. Miller v. Commissioner of Social Security, 246 Fed. Appx. 660 (11th Cir. 2007)(unpub. dec.). The plaintiff has not cited any law indicating that the pertinent legal principles have changed since Miller was decided. Accordingly, Miller adversely resolves the plaintiff's first two contentions.

The plaintiff's initial contention is that the law judge failed to comply with Social Security Ruling 00-4p, 2000 WL 1898704, because he did not inquire of the vocational expert whether there was a conflict between his testimony and the DOT (Doc. 16, pp. 10-15). While the law judge did not specifically ask that question, the law judge could reasonably find that the expert's testimony was consistent with the DOT because the expert stated the DOT number for each of the jobs he identified (Tr. 546). Moreover, even if the law judge had failed to comply with SSR 00-4p, that would not warrant reversal because SSR 00-4p is neither a statute nor a regulation and therefore does not have the force of law. Miller v. Commissioner of Social Security, supra. Consequently, a failure to inquire whether the DOT was consistent with the expert's testimony would not constitute reversible error.

Similarly meritless is the plaintiff's second contention that the law judge did not resolve the purported conflict between the expert's testimony and the DOT. Even assuming there is a conflict between the expert's testimony and the DOT, the expert's testimony would prevail. Jones v. Apfel, 190 F.3d 1224, 1229-30 (11th Cir. 1999), cert. denied, 529 U.S. 1089 (2000). The Eleventh Circuit has held that, where there is a conflict between the expert's testimony and a job description contained in the DOT, "the VE's testimony 'trumps' the DOT." Id. As the court of appeals explained, the DOT is not comprehensive and is to be supplemented with local information, which the expert provides. Id. at 1230.

Plaintiff's counsel iterates her argument that SSR 00-4p modified Jones v. Apfel. The Eleventh Circuit rejected that argument in Miller. Accordingly, the law judge did not commit error when he relied on the testimony of the vocational expert.

The plaintiff's third argument is that the law judge failed to state the weight he accorded to lay witness, Violet Romeo, the plaintiff's mother (Doc. 16, p. 15). He complains that "[t]he ALJ really made no determination, either explicitly or impliedly, as to whether that testimony was believable" (id., p. 16). The Commissioner responds that the mother's testimony was

properly discounted by implication when the law judge discounted the plaintiff's own testimony (Doc. 17, p. 7). Thus, it would not be error if the credibility determination sufficiently covers or implicitly rejects the testimony. Osborn v. Barnhart, 194 Fed. Appx. 654, 666 (11th Cir. 2006).

Importantly, the law judge did not overlook the mother's testimony. Thus, he referred to it several places in his decision (Tr. 12, 13, 15). Indeed, he relied upon that testimony in discounting the opinion of a nonexamining reviewing physician (Tr. 15).

The plaintiff points to two items of the mother's testimony that the law judge failed to assess expressly: (1) the mother did not think the plaintiff could hold down a job because he easily gets upset and would "shut down" and (2) the plaintiff had to lie down during the day due to back problems (Tr. 542A). The law judge, however, expressly set forth this testimony (Tr. 13). Thus, it was neither overlooked nor ignored.

The plaintiff also points to his mother's testimony that he was unable to work, which contradicts his testimony that he is capable of full-time jobs along the lines of the law judge's residual functional capacity finding (Tr. 534-35). The mother's testimony on this matter was not only an opinion (Tr. 542A), but it was an opinion on the question of disability, which is an

issued reserved to the Commissioner. 20 C.F.R. 404.1527(e), 416.927(e). Thus, that opinion is appropriately discounted, just as it would be if it were rendered by a doctor. In all events, the law judge obviously rejected the mother's opinion that the plaintiff could not perform jobs that were consistent with the residual functional capacity, and the reasons for the rejection are the reasons set out in the decision explaining the determination of the plaintiff's residual functional capacity.

It is also clear that the law judge implicitly rejected the mother's testimony that the plaintiff would not be able to do jobs consistent with the residual functional capacity "mainly because of the mere fact that, if there was any communication skills needed, if he got upset like he did a few minutes ago, he just shuts down. His communication skills stop" (Tr. 542A).[2] This testimony by the mother is a conclusory opinion, so that it would typically be discounted even if stated by a doctor. See Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Moreover, it is unclear whether the opinion reflects a mental impairment, as distinct from a contrarious personality or some other character trait (see Tr. 227, 519).

---

[2]At the hearing, the plaintiff became upset when the law judge asked him about the incident where the plaintiff's brother murdered his younger brother, a matter which the plaintiff, understandably, finds very traumatic (Tr. 539-41).

Furthermore, if the opinion is intended to indicate a mental impairment, the law judge has addressed that condition in detail (Tr. 13-14, 15-16). The law judge found that the plaintiff had a severe impairment of major depression, as well as borderline cognitive functioning (Tr. 13). Accordingly, the law judge, in determining the plaintiff's residual functional capacity, set forth several mental limitations. Thus, the law judge restricted the plaintiff to work that, among other things, involves "simple, routine, repetitive job [t]asks in the lowest semiskilled and unskilled job base," with "infrequent contact with co-workers and supervisors and no public contact," and without "stringent time targets or production goals" (Tr. 14). Significantly, the plaintiff has not challenged this residual functional capacity determination. Consequently, if the mother's vague opinion about "shut[ting] down" is predicated upon a mental impairment, the law judge's thorough evaluation of the plaintiff's mental status provides ample explanation for the law judge's implicit rejection of the opinion.

As indicated, the mother also stated that her son had to lie down during the day due to back pain. In this respect, the law judge stated (Tr. 14-15):

> With respect to the alleged back and hip pain the record reveals no persistent complaints of back or leg discomfort to examining or treating medical doctors at the Robinson Family Clinic (Ex. F, pp. 1-40, 196-238) or any other source (Ex. F, pp. 93, 134, 137-138, 191, 193) since the alleged disability onset date. Indeed no restrictions in range of motion of the neck and back or on ambulation were noted by R. Salari, M.D., during his consultative examination of the claimant in January 2006 (Ex. F, p. 134). An undated letter by a chiropractor does indicate, however, that the claimant has been diagnosed with mild-to-moderate sprains and strains in the upper and lower back, allegedly due to multiple car accidents (Ex. F, pp. 262-265). Giving the claimant the benefit of the doubt, the undersigned finds the above-stated lifting restrictions and the need for a sit-stand option. In so doing, the undersigned notes that there is no chronological evidence of orthopedic or even chiropractic treatment and that there is an absence of diagnostic imaging studies related to back or hip problems. Moreover, the claimant's daily activities and recent vocational past further support the exertional limitations noted.

The law judge's indication of the plaintiff's "recent vocational past" refers to substantial work that the plaintiff had performed since 2006 constructing fences (Tr. 516-19), doing fiberglass welding (Tr. 520-21), and working as a flood and mold technician (Tr. 523). The law judge's discussion regarding an alleged back condition clearly supports the law judge's implicit discounting of the mother's testimony concerning a back impairment.

In sum, the law judge's failure to discount expressly the mother's testimony on the three items raised by the plaintiff does not constitute reversible error. Importantly, the law judge did not overlook this testimony, but rather acknowledged it in his decision. Furthermore, the law judge plainly evaluated the mother's testimony since he relied upon it in discounting a medical opinion (Tr. 15). With respect to the three items asserted by the plaintiff, the law judge unquestionably rejected that testimony, albeit implicitly. Moreover, the law judge's explicit evaluation of the evidence provided adequate reasons for rejecting the testimony. This is clearly not a case where the reviewing court is left uncertain as to the basis for the implicit rejections. Accordingly, reversal is not warranted to tighten up the law judge's decision by mandating an explicit credibility determination of certain parts of the mother's testimony because any further explication would not add anything meaningful to what has already been said and to what is already evident from the decision.

The plaintiff's final argument is that the law judge erred when he found the plaintiff had no episodes of decompensation even though he had twice attempted suicide (Doc. 16, pp. 16-17). On November 19, 2004, the plaintiff overdosed on Topamax, which was his seizure medication, and was

seen under the Baker Act (Tr. 449). The transcript does not contain treatment records from the second attempted suicide, which allegedly occurred in 2005 (Tr. 537). However, the plaintiff reported the second attempt to his treating mental health professionals (Tr. 227, 362, 405).

In violation of my scheduling Order, the plaintiff does not explain how a finding of one or two episodes of decompensation would alter the law judge's determination that plaintiff's mental impairment did not meet, or equal, the requirements of listing 12.04 or would otherwise amount to reversible error (Doc. 16, p. 17). The plaintiff was warned in the scheduling Order that he had to "identify with particularity the discrete grounds upon which the administrative decision is being challenged," and that the grounds "must be supported by citations to the record of the pertinent facts" (Doc. 13, p. 2).

The plaintiff has not explained why an error by the law judge in stating that there were no episodes of decompensation, instead of two such episodes, would make any difference. Even if the plaintiff had had two episodes of decompensation, he would still not meet, or equal, listing 12.04, which not only requires three episodes, but also a showing of a marked restriction of activities of daily living, a marked difficulty in maintaining

social functioning, or a marked difficulty in maintaining concentration, persistence, or pace. 20 C.F.R. Part 404, Subpart P, Appendix 1, §12.00C4, listing 12.04. The plaintiff has not even attempted to make the required showing. Furthermore, the plaintiff has developed no argument demonstrating that an error by the law judge regarding whether there were two or more episodes of decompensation would constitute reversible error. Accordingly, the alleged error by the law judge will be rejected for lack of development.

In all events, the plaintiff has failed to show that the law judge erred in his assessment of episodes of decompensation. As recognized by the law judge, "[t]he term *repeated episodes of decompensation, each of extended duration* in these listings means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks." 20 C.F.R Part 404, Subpart P, App. 1, §12.00C4. Apparently, the plaintiff twice attempted suicide, one time in November 2004, and again at some point in 2005. There is no evidence in the record, and the plaintiff points to none, of repeated episodes of decompensation to the extent required under this listing. In other words, assuming that these incidents were episodes of decompensation, there is no evidence that they each lasted for two weeks. Accordingly, the plaintiff

-14-

has not shown that the law judge's decision was erroneous, much less that it contained reversible error.

It is, therefore, upon consideration

ORDERED:

That the decision of the Commissioner of Social Security is hereby AFFIRMED. The Clerk shall enter judgment in accordance with this Order and CLOSE this case.

DONE and ORDERED at Tampa, Florida, this 5th day of March, 2010.

*Thomas G. Wilson*
THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE